Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROGER. W. and M.W., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, and the PROCTER & GAMBLE U.S. ACTIVE PREFERRED PROVIDER ORGANIZATION HEALTH PLAN, <br><br> Defendants. | COMPLAINT |

Plaintiffs Roger W. ("Roger") and M.W., through their undersigned counsel, complain and allege against Defendants United Healthcare Insurance Company, United Behavioral Health (collectively "United") and the Procter & Gamble U.S. Active Preferred Provider Organization Health Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Roger and M.W. are natural persons residing in Hamilton County, Ohio. Roger is M.W.'s father.

2. United Healthcare Insurance Company is a health insurer headquartered in Hennepin County, Minnesota and was the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case.

3. United Behavioral Health is the mental health arm of United Healthcare Insurance Company and processes mental health claims on behalf of the Plan, including the residential treatment claims at issue in this case.

4. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Roger was a participant in the Plan and M.W. was a beneficiary of the Plan at all relevant times. Roger and M.W. continue to be participants and beneficiaries of the Plan.

5. M.W. received medical care and treatment at Gateway Academy LLC ("Gateway") beginning on November 4, 2019. Gateway is a licensed residential treatment facility located in Salt Lake County Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

6. United denied claims for payment of M.W.'s medical expenses in connection with his treatment at Gateway.

7. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

8. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because United does business in Utah, United Behavioral Health has a large facility in Utah where the claims and appeals were sent for processing, and the treatment at issue took place in Utah.

9. In addition, the Plaintiffs have been informed and reasonably believe that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

10. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### M.W.'s Developmental History and Medical Background

11. M.W. was bullied by his peers in junior high and high school. He started going to outpatient treatment but refused to attend after only a few sessions. He also frequently refused to attend school and began showing signs of self-harm, depression, and addiction.

12. In May of 2019, M.W. was admitted to an outdoor behavioral health program in Utah called Outback. Once he returned, he was admitted to a private school but again refused to go.

13. He was chronically dishonest and often became argumentative and violent. He neglected his hygiene and increasingly isolated himself. He had frequent severe mood changes which included crying spells and angry outbursts.

14. He would steal from his parents, expressed an increased interest in weaponry and physical fighting, refused his medications, and expressed suicidal ideation and a desire to self-harm. He also exhibited severe anxiety and had frequent panic attacks.

15. Roger sought approval for residential treatment care and United preapproved Newport Academy. There were no beds available at the time however, and M.W. was instead sent to Gateway.

## Gateway

16. M.W. was admitted to Gateway on November 4, 2019.

17. In a letter dated February 3, 2020, United denied payment for M.W.'s treatment at Gateway from January 21, 2020, forward. The letter offered the following justification for denying payment:

    > Based on the UBH Coverage Determination Guideline for the Mental Health Residential Treatment Center Level of Care, it is my determination that no authorization can be provided from 01/21/2020 forward. Your child was admitted for problems with anxiety depression [sic] and school avoidance. After talking with your child's doctor, it is noted that your child's condition does not meet Guidelines for Coverage of Treatment in this setting. Your child is not having thoughts of harming himself or others. He has not been aggressive. He is taking his medications. He has been participating in his treatment. He does not need the Intensive Environment of a 24 hour setting. Instead, your child's care and recovery could continue care [sic] in the Mental Health Intensive Outpatient Program setting.
    >
    > This is care your child receives in the community for up to 19 hours per week. If you want more information about the UBH coverage determination Guidelines reviewed, see:
    >
    > https://www.providerexpress.com/content/dam/ope-provexpr/us/pdfs/clinResourcesMain/guidelines/optumLOCG/locg/StandardLOCG.pdf

18. On March 17, 2020, Roger appealed the denial of payment for M.W.'s treatment at Gateway. Roger wrote that M.W. had been preauthorized for residential treatment at

Newport Academy when he was admitted to Gateway, however there were no current openings at Newport Academy and M.W.'s behaviors were concerning enough that he would be in significant danger if he were forced to wait for an opening.

19. Roger summarized the factors that had led up to M.W.'s need for residential treatment and asked that United transfer its preapproval for M.W.'s residential treatment at Newport Academy to his residential treatment at Gateway.

20. In a letter dated May 28, 2020, United denied payment for M.W.'s treatment between November 4, 2019, and January 12, 2020. The letter stated in pertinent part:

> I have reviewed the plan for your child's treatment at Gateway Academy. Based on my review of the available documentation and all information received to date, I have determined that coverage is not available under your child's benefit plan for the following reason(s):
>
> Your child was admitted for treatment of mood issues. Your child's care could have continued in the Partial Hospital setting with therapy and medication management. Your child was stable to be managed [sic] at a Partial Hospital Level of Care. A care advocate is available to discuss treatment options and community supports that are available in your area.
> After reviewing the medical records, it is noted your child had made progress and that your child's condition no longer met Guidelines for further coverage of treatment in this setting.
>
> Instead, your child's care and recovery could continue care [sic] in the Mental Health Partial Hospitalization Program setting.

21. On August 27, 2020, Gateway also appealed the denial of payment. The appeal letter stated that M.W. met the appropriate residential treatment guidelines and criteria and his treatment there was medically necessary. The letter also included a copy of M.W.'s medical records to that point.

22. In addition, United was sent letters of medical necessity to support the necessity of M.W.'s treatment. In a letter dated July 17, 2020, Connie Wood, M.S., L.L.P. wrote in part:

5

> I was retained by the [W.] family in October of 2019 to perform a comprehensive case review and assessment of needs for residential treatment for [M.W.], as well as placement recommendations.
>
> As part of the process, I reviewed the psychological testing report dated June of 2019. The testing was performed by Todd Corelli, PhD, a fully licensed psychologist whose practice is dedicated to psychological testing assessments.
>
> [M.W.] had attended the Outback Therapeutic program with the diagnoses of Depression and Anxiety. Both the program and Dr. Corelli recommended that [M.W.] attend a Residential Treatment Center in order to best address his mental health needs.
>
> I consulted with potential programs and provided the recommendation of Gateway Academy, Utah. Gateway specializes in working with intelligent students with anxiety and/or mood disorders. The program and parents agreed and [M.W.] enrolled at Gateway in the Fall of 2019.
>
> During his course of ongoing treatment, I have received clinical updates on [M.W.]'s progress. He continues to require the level of care that Gateway provides.
>
> There were no appropriate programs in the area of the [W. family's] home. There were no matched residential treatment centers within their insurance network.

23. In a letter dated August 7, 2020, David Borba, CSW, wrote in part:

> I am a licensed psychotherapist providing therapy to [M.W.] I have been providing weekly therapy to [M.W.] since his date of admission to Gateway Academy on 11/04/2019. [M.W.] is diagnosed with 300.02 Generalized Anxiety Disorder, and 311 Unspecified Depression Disorder as per the DSM-V.
>
> [M.W.] presents to struggle with excessive worry which [M.W.] expresses interferes with his ability to concentrate, stay on task, and emotionally self-regulate. [M.W.] also presents to struggle with high degrees of impulsiveness, low levels of judgment, and poor executive functioning which in combination often impact [M.W.]'s ability to perform daily activities of living without the increased structure and supervision provided by residential care. In addition to [M.W.]'s struggles with anxiety and impulsivity, [M.W.] also presents with depressive symptoms such as a low sense of self-worth, and low motivation. At times, these depressive symptoms lead [M.W.] to ruminate upon negative self-talk and past mistakes, which [M.W.] often internalizes as shame, thus perpetuating his low sense of self-worth. Each of these symptoms and experiences are congruent with [M.W.]'s diagnoses, reflect [M.W.]'s current experience, and justify [M.W.]'s need of further treatment within a residential setting.

[M.W.] has shown he responds well to residential treatment with some observed decreases in anxiety and depression symptoms, and [M.W.] has shown an improved ability to cope with said symptoms via increased emotional regulation and assertive communication as result [sic] of his treatment. [M.W.] has also reported decreased levels of anxiety toward attending school and remained actively engaged with his academics while at Gateway Academy. However, [M.W.]'s progress has been slow – most likely a reflection of the severity of his symptoms. **Currently, it is my professional opinion that** [M.W.] **still requires residential care to provide** [M.W.] **the structure, supervision and therapeutic support in order to further address** [M.W.]'s **symptoms of anxiety, depression, and ensure** [M.W.]'s **well-being.** (emphasis in original)

24. On September 16, 2020, Roger resubmitted the March 17, 2020, member appeal.

25. In a letter dated September 18, 2020, United stated that it would not process Gateway's appeal without written documentation that Gateway was authorized to file an appeal on the W. family's behalf. The W. family had already submitted this authorization form on multiple occasions, most recently on September 9, 2020.

26. In a letter dated October 1, 2020, United upheld the denial of payment for M.W.'s treatment for dates of service from January 21, 2020, forward. Although the review was ostensibly conducted by a different reviewer, it retains language (including typographical errors) which suggests that significant portions of the denial were simply copy and pasted from previous decisions or sourced from a template. The letter gave the following justification for the denial:

> Based on the Optum Coverage Determination Guideline for the MENTAL HEALTH RESIDENTIAL TREATMENT CENTER Level of Care, it is my urgent determination that no authorization can be provided from January 21, 2020 forward.
>
> Your child was admitted for problems with anxiety depression [sic] and school avoidance.
>
> After talking with the designee of your child's doctor, your child's condition does not meet Guidelines for coverage of treatment in this residential setting.

> Your child has been behaviorally stable during the period of time appeal [sic] from January 21, 2020 forward and actually had been at this facility since November 2019 and in wilderness treatment for several months prior to that.
> Your child was not having thoughts of harming himself or others.
> He had not been aggressive.
> He was taking his medications with no significant changes since his admission.
> He has been participating in his treatment.
> He was doing well in academic programming with no noted anxiety with peers.
> He no longer needs the intensive environment of a 24 hour setting.
>
> Instead, your child's care and recovery could have continued in a MENTAL HEALTH INTENSIVE OUTPATIENT PROGRAM setting. This is care you child [sic] receives in the community for up to 19 hours per week.

27. In a letter dated October 6, 2020, United stated that it had received an appeal request on September 21, 2020, but could not process the appeal request without an "Admission or Intake Assessment" and "Other Medical Records."

28. On October 8, 2020, Gateway resubmitted its August 27, 2020, appeal.

29. In a letter dated November 9, 2020, United upheld the denial of payment for M.W.'s treatment from January 21, 2020, forward. The letter stated in pertinent part:

> Taking into consideration the available information, along with the additional clinical information given by the doctor designee during the 2nd Urgent Appeal, and also the locally available clinical services, it is my determination that the requested service does not meet the Optum Coverage Determination Guideline required to be followed in the member's behavioral health plan benefits.
>
> Specifically: As of January 21, 2020 forward, this member's clinical condition appears to be stable to the extent that he does not require a facility-based program which delivers 24-hour/7-day assessment and diagnostic services, and active behavioral health treatment to continue with his recovery. There are no behavioral management challenges requiring 24 hour care and supervision. He has no suicidal or self harm thinking; no self injurious behaviors are reported. He poses no risk of harm to others - he is not threatening, or aggressive. He is thinking clearly and has no bizarre beliefs. He is noted to be generally calm and more cooperative, motivated and engaged, responsive to staff, and doing well. He is medically stable, with adequate sleep, appetite and self-care. He is not having medication side effects. There are no clinical barriers preventing the member from transitioning to a less intensive level of care. His overall care could continue at this point in an IOP setting, preferably near home, with continued individual therapy, and family work. This would help to monitor and maintain h,is [sic]

stability, continue to increase his functioning, develop a support system and further strengthen key relationships with friends and treatment professionals, while integrating him back into family and community life.

Using the Optum Coverage Determination Guideline (s) for Depressive Disorder in a Mental Health Residential Treatment Center level of care, we reviewed a request to continue benefit coverage as of January 21, 2020 forward.
You have been receiving treatment for problems with your worries, mood and school avoidance.

Your request was reviewed by a doctor.
We reviewed your clinical case notes.
We talked to your doctor.

The criteria are not met because:

You have made progress and your condition no longer meets the guideline for coverage of treatment in this setting.
You could be treated in a less intensive Level of Care.

In your case:

You are doing better.
You present no behavioral management challenges requiring 24 hour care.
There are no current safety concerns.
You are medically stable.
You take and tolerate your medication; no changes are anticipated.
You are willing and able to participate in treatment.
You are learning and using some healthier coping skills.
You have the support of family.
Care and Recovery could continue in the MENTAL HEALTH INTENSIVE OUTPATIENT PROGRAM setting. This is care you receive in the community for up to 19 hours per week.

30. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

31. The denial of benefits for M.W.'s treatment was a breach of contract and caused Roger to incur medical expenses that should have been paid by the Plan in an amount totaling over $600,000.

//

9

# FIRST CAUSE OF ACTION

## (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

32. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

33. United and the Plan failed to provide coverage for M.W.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

34. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

35. The denial letters produced by United do little to elucidate whether United conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled. United failed to substantively respond to the issues presented in Roger or Gateway's appeals and did not meaningfully address the arguments or concerns that they raised during the appeals process.

36. In addition, United appears to have applied its guidelines incorrectly when assessing the medical necessity of M.W.'s treatment. United stated that its decision was based on its Level of Care Guidelines in effect at the time. These guidelines list only two factors for admission to a residential treatment center, they are:

- See Common Criteria
  AND
- Safe, efficient, effective assessment and/or treatment of the member's condition requires the structure of a 24-hour/seven days per week treatment setting. Examples include the following:
    - Impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the members or others is endangered.
    - Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care.

37. As Intensive Outpatient Programs also require individuals to meet common criteria and United recommended intensive outpatient treatment, United does not appear to dispute that the first factor was met. Consequently, for M.W.'s treatment to be approved, Roger only had to demonstrate that 24-hour residential treatment was necessary to provide safe, efficient, and effective treatment of M.W.'s conditions.

38. Instead, United relied on factors such as, "He was taking his medications" and "Your child was not having thoughts of harming himself or others" to reach its decision to deny payment.

39. This discrepancy is especially concerning given United's preapproval of M.W.'s residential treatment at a different facility followed by its decision to deny payment for the treatment at Gateway when the initial facility was not available.

40. United made no attempt to account for its decision to deny payment at one residential treatment center when it had already preapproved payment for another.

41. United and the agents of the Plan breached their fiduciary duties to M.W. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in M.W.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of M.W.'s claims.

42. The actions of United and the Plan in failing to provide coverage for M.W.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

43. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under both causes of action.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

44. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of United's fiduciary duties.

45. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

46. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

47. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a

lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

48. The medical necessity criteria used by United for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

49. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for M.W.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

50. For none of these types of treatment does United exclude or restrict coverage of medical/surgical conditions by imposing restrictions such as an acute care requirement for a sub-acute level of care. To do so, would violate not only the terms of the insurance contract, but also generally accepted standards of medical practice.

51. When United and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

52. United and the Plan evaluated M.W.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

53. A MHPAEA violation can occur as both a facial violation where the written terms of the Plan are themselves unequal and on an as-applied basis where ostensibly neutral terms are additionally burdened in application through the imposition of other factors which restrict the availability of treatment.
54. As noted above, the Optum Guidelines used to assess the medical necessity of residential treatment are, at least as written, relatively permissive and require the member only to meet a set of common criteria and demonstrate that the treatment is necessary.
55. However, the language of United's denial letters reveals that United's reviewers imposed a stricter standard for payment of M.W.'s treatment than the language in its guidelines or the terms of the Plan.
56. United's improper use of acute inpatient medical necessity criteria is revealed in the statements in United's denial letters such as "[y]our child is not having thoughts of harming himself or others."
57. This improper use of acute inpatient criteria was a nonquantitative treatment limitation that cannot permissibly be applied to evaluate the sub-acute level of care that M.W. received.
58. The Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria to receive Plan benefits.
59. Treatment provided in an acute care environment is necessarily distinct from treatment provided in a non-acute environment. Utilizing acute criteria to evaluate a non-acute claim will result in a near universal denial of benefits, regardless of the medical necessity, clinical appropriateness, or nature of the treatment.

60. The Defendants cannot and will not deny that use of acute care criteria, either on its face or in application, to evaluate sub-acute treatment violates generally accepted standards of medical practice.

61. They must and do acknowledge that they adhere to generally accepted standards of medical practice when they evaluate the medical necessity criteria of both mental health/substance use disorders and medical/surgical claims.

62. Other statements which show disparate application of medical necessity criteria between residential treatment and skilled nursing or inpatient rehabilitation treatment include declarations such as "[y]ou have made progress" or "[h]e has been participating in his treatment."

63. United did not list factors such as these as prerequisites for care to be approved until it elected to deny payment. Nor does United require factors such as these for analogous medical or surgical services to be approved.

64. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and United, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

65. The violations of MHPAEA by United and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

   (a) A declaration that the actions of the Defendants violate MHPAEA;

(b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

66. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for M.W.'s medically necessary treatment at Gateway under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs'

Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 9th day of November, 2023.

By    <u>s/ Brian S. King</u>
      Brian S. King
      Attorney for Plaintiffs

County of Plaintiffs' Residence:
Hamilton County, Ohio